212

**GEORGE E. WARREN CORPORATION v.
PICTON S. S. CO., Limited.**
No. 3374.

Circuit Court of Appeals, First Circuit.
Dec. 6, 1938.

Whiting Willauer, of Boston, Mass.
(Bingham, Dana & Gould, of Boston, Mass.,
on the brief), for appellant.

G. Philip Wardner, of Boston, Mass.,
for appellee.

Before BINGHAM and WILSON, Circuit Judges, and PETERS, District Judge.

BINGHAM, Circuit Judge.

This is an appeal from a decree of the federal District Court for Massachusetts in an admiralty suit adjudging that the libellant recover from the respondent the sum of $527.17 with interest from the date of demand and costs; the $527.17 being the amount allowed the libellant as extra expense for taking its steamship to Lynn, Mass., under the following circumstances:

November 15, 1933, the libellant entered into a charter-party in London, England, with the Anglo-Soviet Shipping Company, Ltd., London, acting as agent for Amtorg, New York. Pursuant to the charter-party the ship loaded a part of its cargo of coal at Mariupol, for which the ship's master, on December 23, 1933, issued a bill of lading acknowledging the shipment thereof by the charterer for delivery at Boston to the order of Brown Shipley & Co., Ltd., London, or assigns. The bill of lading at a later date, the exact time not disclosed, was delivered to and endorsed by Brown Shipley & Co., Ltd., to the respondent, which became the consignee of this portion of the cargo. Additional coal was loaded at Nicolaieff for which, on January 3, 1934, a like bill of lading was issued by the master to the order of Brown Shipley & Co., Ltd., or assigns, and likewise delivered and endorsed, so that the respondent became the consignee of the remaining portion of the cargo. The ship was originally bound for Boston, but during the voyage, by agreement between the charterer and the libellant (the ship owner) the ship was diverted from Boston to Portland, Maine. No question is made as to this change.

The charter-party provided (clause 30) that "the charterer is to have the option of discharging at two safe ports in the United States * * * in which case rate of freight to be 6 d. (six pence) per ton extra;" also (clause 31) that "orders for a second port of discharge, if decided, to be given not later than twenty-four hours aft-

er arrival of steamer at first discharging port." January 31, 1934, the charterer named Boston as the second port of discharge. The ship arrived at Portland and finished discharging there February 15, 1934. Within twenty-four hours after the ship arrived at Portland the respondent ordered her to go to Lynn as the second port of discharge. While the ship was at Portland and before it was ordered to Lynn, it was made known by the libellant to the respondent that the vessel had been chartered out from Boston. There were no outbound charters available at Lynn.

Thereafter, on February 14, 1934, the owner (London) cabled the Portland office of John G. Hall & Co., the respondent's agent, that if it was impossible to get the receivers (consignee) to discharge at Boston as the second port according to London definite instruction the 31st of January, they would accept Lynn as a second port of discharge, reserving their right to damages, etc., and the extra expense incurred by the alteration of the orders. They also requested a definite guarantee that the steamer would be finally discharged at Lynn by the 18th of February at the latest. And on the same day Hall & Co., Ltd., on behalf of the respondent, cabled the owner in London that the respondent had ordered the ship to Lynn as a second port of discharge pursuant to the terms of the charter; that it could not guarantee to complete the discharge on Sunday as the vessel would not arrive at Lynn before Friday noon, but that it expected to finish late Monday, and Tuesday at the latest; that, if discharge at Boston could be arranged, it could not finish before the end of the next week at the earliest.

The master on February 15, 1934, sent a like letter to the charterer (Amtorg, N. Y.) protesting the divergence to Lynn as the second discharging port.

After the receipt of the above cable from the owner the ship proceeded to Lynn where she finished discharging the balance of her cargo February 19, 1934, and then proceeded to Boston where she arrived February 21, 1934, and performed her grain charter out from there.

At the trial counsel agreed that if neither the charterer nor the respondent had the right to change the destination of the ship to Lynn, the libellant was entitled to recover.

The ship owner and the charterer having agreed upon Portland as the port of discharge, as to which the respondent makes no complaint, the situation stands the same as if Portland had been originally named in the charter-party and bills of lading as the port of destination; and the charter-party, the contract between the charterer and the owner, having provided in express terms that "the charterer should have the option of discharging at two safe ports in the United States," it is to be presumed, in the absence of proof to the contrary, and there is none, that this right continued and remained with the charterer at the time it exercised the option and named Boston as the second port of discharge. This being so, the question is whether the option, having been rightfully exercised by the charterer as agreed, became irrevocable so that no right thereafter remained in the charterer to name a second port. Surely, if the charterer then had no such right, the respondent consignee had none, for the right, if any it may have had, was derived through that of the charterer under the charter-party.

We think that, under the circumstances here existing, the District Court did not err in holding that once the charterer exercised its option under clauses 30 and 31 of the charter-party the election became conclusive and was as if the original charter contract provided for discharging at Portland and Boston (Tapscott v. Balfour, L.R. 8 C.P. 46; Tharsis Sulphur & Copper Co. v. Morel, [1891] 2 Q.B. 647, 650, 652); nor in holding that the libellant was under no obligation to send the ship to Lynn. As the parties have agreed that, if neither the charterer nor the respondent had the right to change the destination to Lynn, the libellant was entitled to recover the expenses incident thereto, the libellant should recover the same.

The expense incurred by the libellant in going to Lynn was $527.17. When the vessel left Portland the respondent knew she was under charter out of Boston for a cargo of grain and that to carry out that contract she would be required to go there. If the vessel had gone to Boston to discharge her cargo of coal, as she had the right to do, she would have been relieved of the entire expense of $527.17 in going to Lynn, without any deduction. We think the District Court did not err in allowing $527.17 as the additional expense incurred by the libellant in going to Lynn.

214

The ship went to Lynn under protest, not as a matter of obligation to the respondent under the charter-party or bills of lading.

The decree of the District Court is affirmed, with costs to the appellee.